**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CLEON ABRAMS, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 07-0622-WS-B** |
| | ) | |
| **OLIN CORPORATION, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This action comes before the Court on plaintiffs' Motion to Remand (doc. 9) this removed action to the Circuit Court of Washington County, Alabama. The Motion has been briefed and is ripe for disposition.

## I. Background.

### *A. The Washington County Complaint.*

On August 6, 2007, Cleon Abrams and 75 other individual plaintiffs, by and through counsel, filed a Complaint in the Circuit Court of Washington County, Alabama, against nine named defendants, including Olin Corporation, Olin Chlor Alkali Products Company, Arch Chemicals, John Joseph McFalls Jr., Joseph C. Rytlewski, Larry S. Casteel, Ronald G. Bobel, Jimmy Upton, and Robert J. Wenzinger. The Complaint alleges that all 76 plaintiffs are adult resident citizens of Washington County, Alabama, who reside and/or own property near an Olin chemical manufacturing plant in McIntosh, Alabama. The gravamen of the Complaint is that the discharge of mercury (and associated hazardous/toxic substances) from the Olin plant has contaminated the plaintiffs' properties. In particular, the Complaint alleges that mercury was a waste product of the Olin plant, that defendants knew mercury wastes were being transported onto plaintiffs' properties but concealed that information, that Olin collected data confirming the contamination of plaintiffs' properties for years but suppressed that data from plaintiffs, that Olin failed to contain mercury wastes on its property to prevent them from being transported offsite onto plaintiffs' properties by natural and manmade means, that Olin created a false perception

among plaintiffs that it had cleaned up and/or contained the mercury wastes despite actual knowledge that it had not done so, and that the defendants failed to use reasonable care to safeguard plaintiffs and their properties from the risk of injury or to warn them of the dangers caused by the ongoing discharge of hazardous and toxic substances from the Olin plant.

On the strength of these allegations, the Complaint identifies six exclusively state-law causes of action against all defendants, including the following: (a) a claim of trespass and continuing trespass relating to defendants' ongoing deposit of contaminants on plaintiffs' properties; (b) a claim of continuing nuisance arising from the invasion of hazardous and toxic substances contaminating plaintiffs' properties; (c) a claim that defendants were negligent in failing to contain the pollution, remediate the pollution, discover the pollution, warn plaintiffs of the pollution, develop and implement a pollution control plan, and assess and control pollution escaping from Olin property into the community; (d) a claim that defendants were wanton with respect to the same omissions as to which they were allegedly negligent; (e) a claim that defendants are strictly liable for plaintiffs' damages arising from defendants' pollution because defendants were involved in ultrahazardous activities; and (f) a claim of fraud alleging that defendants intentionally misrepresented the status of efforts to contain and control pollutants from the Olin plant, deceiving plaintiffs as to the ongoing damage to their properties caused by defendants' activities.

Of particular significance in evaluating the pending Motion to Remand, the Complaint seeks relief from not only the Olin corporate entities, but also six individual defendants (McFalls, Rytlewski, Casteel, Bobel, Upton, and Wenzinger) (the "Individual Defendants"). Each of those individuals is alleged to be "an adult resident citizen of the State of Alabama [who] is and/or was a plant manager, environmental control manager, or other officer of the Olin facility in McIntosh, Alabama, having responsibility for the matters referenced herein." (Complaint, ¶¶ 66-71.) The Complaint alleges trespass, nuisance, negligence, wantonness, strict liability and fraud claims against the Individual Defendants in the same manner and to the same extent that it does against the three corporate entity defendants (which for simplicity's sake will be collectively referred to herein as "Olin").

***B. The* LaBauve *Lawsuit.***

This is not the first lawsuit to be filed against Olin by property owners in and around

McIntosh, Alabama complaining that Olin's activities had contaminated their properties. In a federal action styled *Carrie Jean LaBauve, et al. v. Olin Corporation, et al.*, Civil Action No. 03-0567-WS-B, and filed in this District Court, five plaintiffs brought a putative class action against Olin corporate entities (but no individuals) seeking recovery of damages for alleged diminution in property values caused by mercury contamination emanating from the Olin plant. This Court is well acquainted with *LaBauve*; indeed, that case was pending on the undersigned's docket for more than three years before its final disposition.

On November 10, 2005, the undersigned denied class certification in the *LaBauve* action via a lengthy order entered after a multiple-day evidentiary hearing on the Rule 23 issues. *See LaBauve v. Olin Corp.*, 231 F.R.D. 632 (S.D. Ala. 2005).[1] In late 2006, the parties to the *LaBauve* action reached a voluntary settlement, and that case was dismissed. None of the 76 plaintiffs in the case at bar were plaintiffs in the *LaBauve* action, or otherwise participated in that litigation.[2] Sherry Stryker Johnson, one of the eight attorneys of record for the *LaBauve*

---

[1] Olin's references to *LaBauve* in its briefs in this case may convey the impression that the November 2005 order constituted a final determination on the merits of those plaintiffs' claims of diminution in property value occasioned by alleged Olin contamination. Any such inference is faulty. The cited order solely addressed class-certification issues, and took pains to explain that "[i]n performing the Rule 23 analysis, the Court may not inquire into the merits of plaintiffs' claims at this preliminary stage." *LaBauve*, 231 F.R.D. at 643. As such, any attempt by defendants to rely on that class-certification ruling as some kind of binding decision concerning the merits of other claims brought by other plaintiffs against Olin in another case is improper.

[2] Olin's contention that "even some of the Plaintiffs are the same" (Defendants' Brief, at 1) in this case and in *LaBauve* is simply false. That said, the Court understands that when Olin settled the *LaBauve* action, it solicited other members of the McIntosh community to enter into agreements pursuant to which those individuals released any claims they might have against Olin and related entities and persons in exchange for a cash payment. It appears that most of the plaintiffs in this case either rejected or did not receive Olin's compromise overtures at that time, but elected to file this suit instead. In its briefing, however, Olin alleges that several plaintiffs in this case entered into such side agreements with it. If true, those plaintiffs may be barred by the releases they signed from pursuing their present claims, but the releases of a few plaintiffs could not have preclusive effect on the claims of all 76 plaintiffs. Moreover, mere execution of such an agreement with Olin in no way renders any of the 76 plaintiffs herein a plaintiff in the *LaBauve* litigation for purposes of any *res judicata* or collateral estoppel argument that defendants may now wish to advance. The Court rejects Olin's suggestion that by

plaintiffs, is also one of four attorneys of record for plaintiffs in this case; otherwise, there is no overlap in plaintiffs' counsel between the two lawsuits.

***C. Defendants' Notice of Removal.***

On September 6, 2007, the Olin corporate defendants filed a Notice of Removal (doc. 1) in this District Court, removing this action from state court pursuant to 28 U.S.C. §§ 1441 and 1446. To support federal subject matter jurisdiction, defendants relied on 28 U.S.C. § 1332, alleging that there is complete diversity of citizenship and that the amount in controversy exceeds $75,000, exclusive of interest and costs.

On the face of the Complaint, all 76 plaintiffs and all six Individual Defendants are alleged to be citizens of the State of Alabama. Olin does not dispute those allegations; however, its Notice of Removal states that the Individual Defendants' citizenship may be disregarded for jurisdictional purposes because "Plaintiffs have no possibility of recovery against the Individual Defendants based on the allegations of the Complaint." (Notice of Removal, ¶ 20.) In particular, Olin reasons that, even though the Complaint did not specify the dates of the alleged wrongdoing, the time frame must be from 1952 to 1982 because that was the time period of concern in the *LaBauve* action. Having made the leap of logic that there must be temporal identity between *LaBauve* and the case at bar, Olin continues, plaintiffs' theory against the Individual Defendants must be that they were managers at the Olin plant "from 1952 to 1982 when the relevant conduct occurred." (*Id.*, ¶ 18.) Based on an affidavit from an Olin manager stating that none of the Individual Defendants were employed at Olin's McIntosh facility at any time between 1952 and 1982 (excepting defendant Upton, who worked there as an accountant from 1980 to 1982), defendants conclude in their Notice of Removal that "Plaintiffs can prove no cause of action against any of the Individual Defendants." (*Id.*, ¶ 19.)

Plaintiffs disagree with defendants' argument that the Individual Defendants were fraudulently joined. On that basis, plaintiffs filed a Motion to Remand on September 19, 2007, petitioning this Court to remand the case to the Circuit Court of Washington County for lack of

signing an agreement with Olin at around the time of the *LaBauve* settlement, individuals were somehow transformed into *LaBauve* plaintiffs when they never appeared in, made claims in, or otherwise participated in that case, which did not proceed as a class action.

jurisdiction because complete diversity is not present. Thus, the singular issue presented by the parties for resolution by this Court is whether the Individual Defendants were fraudulently joined. If the question is answered affirmatively, then § 1332 jurisdiction lies and this action can properly proceed in federal court. If the question is answered negatively, then § 1332 jurisdiction does not attach and remand to state court is mandatory.

## II. Analysis.

### *A. Legal Standard for Motion to Remand.*

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must establish the existence of federal jurisdiction. *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) ("A removing defendant bears the burden of proving proper federal jurisdiction."); *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996), *overruled on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand. *See University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (explaining that strict construction of removal statutes derives from "significant federalism concerns" raised by removal jurisdiction).[3]

There being no federal question presented in the Complaint, defendants predicated removal on diversity of citizenship. Under 28 U.S.C. § 1332(a), federal courts have original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. *See Darden v. Ford Consumer Finance Co.*, 200 F.3d 753, 755 (11th Cir. 2000) (to qualify for diversity jurisdiction, complaint must establish "complete diversity of the parties' citizenship and an amount in controversy exceeding $75,000"); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284,

---

[3] *See also Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1333 (11th Cir. 1998) (expressing preference for remand where removal jurisdiction is not absolutely clear); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) (uncertainties regarding removal are resolved in favor of remand); *Newman v. Spectrum Stores, Inc.*, 109 F. Supp.2d 1342, 1345 (M.D. Ala. 2000) ("Because federal court jurisdiction is limited, the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear.").

1287 (11th Cir. 1998). "In light of the federalism and separation of powers concerns implicated by diversity jurisdiction, federal courts are obligated to strictly construe the statutory grant of diversity jurisdiction ... [and] to scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (citations omitted). Additionally, the party asserting diversity jurisdiction (in this case, Olin) bears the burden of proving its existence. *See, e.g., King v. Cessna Aircraft Co.,* --- F.3d ----, 2007 WL 3085567, *10 (11th Cir. Oct. 24, 2007) ("Where, as here, the plaintiff asserts diversity jurisdiction, he has the burden to prove that there is diversity.").

***B. The Law of Fraudulent Joinder.***

The law is clear that § 1332 demands complete diversity, such that no plaintiff may be a citizen of the same state as any defendant. *See, e.g., Florence v. Crescent Resources, LLC,* 484 F.3d 1293, 1297 (11th Cir. 2007) (recognizing "necessary corollary" of diversity jurisdiction that "complete diversity of citizenship" is required) (citation omitted); *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1198 n.31 (11th Cir. 2007) ("Section 1332(a)'s diversity requirement has been interpreted to require complete diversity among the parties."); *Legg v. Wyeth*, 428 F.3d 1317, 1320 n.2 (11th Cir. 2005) ("Federal diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity - the citizenship of every plaintiff must be diverse from the citizenship of every defendant.").[4]

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs*, 154 F.3d at 1287. Notwithstanding the complete diversity requirement, a non-diverse defendant who is fraudulently joined does not defeat diversity because his citizenship is excluded from the diversity calculus. Under well established

---

[4] Of course, mere diversity is not sufficient to give rise to jurisdiction under § 1332. Rather, "the court is obligated to assure itself that the case involves the requisite amount in controversy." *Morrison*, 228 F.3d at 1261. The amount in controversy is assessed as of the date of removal. *See Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006) ("In gauging the amount in controversy, courts view the claims from the vantage point of the time of removal."); *Burns*, 31 F.3d at 1097 n.13 ("Jurisdictional facts are assessed on the basis of plaintiff's complaint as of the time of removal."). Because the complete diversity issue is dispositive of plaintiffs' Motion to Remand, the Court need not reach the question of whether the requisite amount in controversy is satisfied.

law, a finding of fraudulent joinder is appropriate in the circumstances presented here only if "there is no possibility the plaintiff can establish a cause of action against the resident defendant. ... The defendant must make such a showing by clear and convincing evidence." *Henderson v. Washington National Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). The burden on the removing party to prove fraudulent joinder is a "heavy one." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997); *see also Gonzalez v. J.C. Penney Corp.*, 2006 WL 2990086, *3 (11th Cir. Oct. 20, 2006) ("The burden of establishing fraudulent joinder is a heavy one."). In assessing a fraudulent joinder objection, "the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998).

Recently, the Eleventh Circuit summarized the fraudulent joinder inquiry as follows: "if there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." *Florence*, 484 F.3d at 1299.[5] Lending substance and depth to this "any possibility" language, the appellate court has explained that "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*, 154 F.3d at 1287; *see also Pacheco de Perez*, 139 F.3d at 1380 (mere "colorable claim" is sufficient to negate fraudulent joinder argument and to compel remand). Nonetheless, it bears emphasizing that "[t]he potential for legal liability must be reasonable, not merely theoretical," in order to foil a fraudulent joinder objection. *Legg*, 428 F.3d at 1325 n.5 (observing that possibility of liability is evaluated by reason and common sense, and that more is required than such a possibility that a designated residence might be struck by a meteor on a given evening)

---

[5] *See also Triggs*, 154 F.3d at 1287 ("If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court."); *GMFS, L.L.C. v. Bounds*, 275 F. Supp.2d 1350, 1353-54 (S.D. Ala. 2003) ("A defendant (typically a resident of the forum) is fraudulently joined if there is no possibility that the plaintiff can prove a cause of action against him.").

(citations omitted).[6]

The unambiguous directive emerging from the above authorities is that this Court's objective in evaluating the Motion to Remand is to "decide whether the defendants have proven by clear and convincing evidence that no Alabama court could find this complaint sufficient" to state a viable cause of action against the Individual Defendants. *Henderson*, 454 F.3d at 1284.

***C. Application of Fraudulent Joinder Principles.***

In their Notice of Removal, defendants' lone stated ground for asserting that the Individual Defendants had been fraudulently joined was that the alleged wrongdoing occurred from 1952 through 1982, but that none of the Individual Defendants were employed at the Olin plant in McIntosh in a managerial capacity at that time. This argument fails. Nowhere does the Complaint circumscribe plaintiffs' claims to alleged activities occurring between 1952 and 1982. To the contrary, a fair reading of the Complaint is that the alleged wrongdoing about which plaintiffs complain persists to the present day. *See* Complaint, ¶ 124 ("Defendants' wrongful actions and Plaintiffs' damages are continuing in nature."); ¶ 127 (complaining of "continuing trespass"); ¶ 129 (complaining of "continuing nuisance"); ¶ 138 (alleging that defendants' intentional misrepresentations "cause Plaintiffs and others to remain unaware of the ongoing pollution damage").[7] As there is no reason to believe that plaintiffs' claims in this case are

---

[6] In weighing the parties' respective arguments, the Court examines "the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Legg*, 428 F.3d at 1322 (citation omitted). In that respect, the procedural mechanism for resolving a fraudulent joinder objection is akin to that utilized on summary judgment. *See id.*

[7] In arguing that the relevant time period must expire in 1982, defendants point to an excerpt from an Order entered in the *LaBauve* action, wherein the undersigned observed that "[t]he Rule 23 hearing made plain that this litigation is and always has been about mercury wastes released by Olin between 1952 and 1982." *LaBauve*, 231 F.R.D. at 656 n.50. By contrast, it is far from plain in this case, which involves different plaintiffs bringing different (albeit overlapping) allegations against different (albeit overlapping) defendants, that this litigation is solely about mercury wastes released between 1952 and 1982. Olin's overreaching in applying *LaBauve* here is underscored by the same paragraph from which defendants selectively quote, wherein the Court observed that "plaintiffs maintain that offsite disposal of mercury-laden aggregate occurred as recently as several years ago," but that the *LaBauve* plaintiffs were not contending that their properties had been affected by those activities. *Id.*

confined to allegations of wrongful activity terminating in 1982, the fact that none of the Individual Defendants were employed as managers at Olin's McIntosh plant until after 1982 in no way bars plaintiffs' claims against them herein.

Perhaps recognizing the infirmity of this argument, defendants develop several new arguments (not presented in their Notice of Removal) for fraudulent joinder in briefing the Motion to Remand. These far-reaching contentions read like a preemptive strike seeking entry of summary judgment in all defendants' favor, stopping this litigation dead in its tracks before any discovery has taken place, rather than a mere opposition to a motion to remand.[8] Be that as it may, defendants' arguments fail because they take unwarranted liberties with the Complaint, speculate as to what the evidence will show, lack the requisite clear and convincing proof by defendants, and hinge on an array of optimistic assumptions that are far from slam-dunk

---

There is absolutely no reason to think that all 76 plaintiffs in this case will adopt the same approach. Thus, defendants overlook that passage of *LaBauve*, instead insisting, incorrectly, that it is an "undisputed fact that any alleged actionable mercury *release* also occurred no later than 1982." (Defendants' Brief (doc. 15), at 2.) The evidence in *LaBauve* showed that Olin officials moved mercury wastes off-site and into the community long after 1982. Although Olin would wave that evidence away because the *LaBauve* plaintiffs did not link it to their alleged damages at the Rule 23 hearing, there is no basis for concluding that these plaintiffs will fail to do so in this case. Indeed, while the *LaBauve* plaintiffs made no claims or evidentiary showings tying recent mercury disposal activity to their properties, it is entirely possible that plaintiffs in this case will do just that. Plaintiffs, and not Olin, are the masters of their Complaint. The Court therefore will not allow Olin to fix the contours of plaintiffs' claims by virtue of a selective, distorted and one-sided recitation of snippets of a class-certification order entered in another case involving different plaintiffs and different claims than those at issue here.

[8] In fact, defendants urge the Court to skip over the discovery process altogether because "some of these Plaintiffs and Plaintiffs' counsel were privy to all of the information revealed as a result of *LaBauve*." (Defendants' Brief, at 5.) This speculative statement appears unfounded. None of the 76 plaintiffs in this case were parties in *LaBauve*, so how would they have been "privy" to the discovery results in that case, particularly given the protective orders and confidentiality restrictions attendant to at least portions of that discovery? And the fact that Attorney Johnson was one of eight plaintiffs' lawyers in *LaBauve* does not necessarily imply that she accessed, reviewed, and digested the hundreds of thousands of pages of discovery generated in that case, much less that the *LaBauve* discovery is coextensive with that to which these 76 plaintiffs are entitled in this case. Defendants offer no basis for knowing how work was allocated among the eight *LaBauve* plaintiffs' attorneys or to what extent other plaintiffs' counsel in *LaBauve* shared the minutiae of discovery results with Johnson.

guarantees at this time. The Court will address the defects in each argument in turn.

As an initial matter, Olin maintains that plaintiffs' efforts to hold Individual Defendants liable on a continuous tort theory when "the lynchpin of their claims occurred 25 years ago" cannot succeed, as a matter of law. (Defendants' Brief, at 3.) In support of this contention, Olin quotes an excerpt from the *LaBauve* order denying class certification, wherein the Court stated that "the continuous tort doctrine is not available in instances where a single act is followed by multiple consequences." 231 F.R.D. at 656. At this stage, however, there is no reason to believe that plaintiffs are alleging a single act followed by multiple consequences. To the contrary, the Complaint alleges that not only were there mercury emissions during the manufacturing process that occurred in the 1952 to 1982 period, but also that "Olin dumped its mercury-laden waste on public areas in the McIntosh community" at some later date(s). (Complaint, ¶ 106.) Additionally, the Complaint alleges that defendants knew that mercury was migrating from the Olin plant site and onto plaintiffs' properties, but concealed that information, failed to engage in efforts to contain the mercury on Olin property, and misrepresented the facts. (*Id.*, ¶¶ 109-11, 115-21.) Far from constituting "a single act followed by multiple consequences," these allegations are indicative of numerous acts of wrongdoing continuing up through the present day as mercury continues to be transported from Olin's site onto plaintiffs' properties, with knowledge by defendants and a dearth of any effective action to contain the contaminants on Olin land.[9] Based on the allegations and arguments presented at this time, the Court finds that

---

[9] Indeed, Olin misreads the *LaBauve* excerpt on which it relies. In that text, the Court wrote that no continuous tort theory is supportable "[t]o the extent that the continuing wrongdoing claimed by plaintiffs consists of either secondary migration of Olin pollutants in the community or defendants' failure to take appropriate offsite remedial measures to correct existing contamination." *LaBauve*, 231 F.R.D. at 656. This passage of *LaBauve* was directed to the plaintiffs' theory that mercury contamination was emitted from the Olin plant many years ago, but that it had been migrating secondarily in the community in the intervening years and Olin had failed to come out in the community and clean it up, giving rise to a continuous tort. The Court disagreed. But that *LaBauve* allegation is markedly different from the allegations of the Complaint in this case that mercury contamination continues to migrate from Olin property onto plaintiffs' properties, that Olin knows the mercury is migrating from its facility to plaintiffs' properties, and that despite such knowledge Olin is failing to contain that mercury to prevent such migration from its site or to notify the public. If a quantity of mercury waste that Olin dumped on its own property in 1982 sat on the Olin site until yesterday, when it was picked up

defendants have failed to show by clear and convincing evidence that plaintiffs' continuous tort theory must necessarily fail as to the Individual Defendants.

Next, defendants contend that plaintiffs' claims against the Individual Defendants are foreclosed as a matter of law by operation of Alabama's 20-year rule of repose. According to Olin, "[b]ecause the last release of mercury allegedly causing contamination Plaintiffs' properties undisputedly occurred 25 years ago, all of Plaintiffs' claims against the individual Defendants are barred by the rule of repose." (Defendants' Brief, at 6.) There are two glaring defects with this argument. First, just last month the undersigned ruled for the second time in another case that the federally required commencement date found at 42 U.S.C. § 9658(a)(1) preempts the commencement date of Alabama's rule of repose. *See Fisher v. Ciba Specialty Chemicals Corp.*, 2007 WL 2995525, *15 (S.D. Ala. Oct. 11, 2007).[10] The Court's reasoning in *Fisher* applies with equal force here; therefore, the commencement date of plaintiffs' claims for Alabama rule of repose purposes is not the date of the harmful action, but rather the date on which plaintiffs knew or reasonably should have known that defendants' actions had damaged their property. Defendants offer no evidence that that commencement date passed more than 20 years ago for all plaintiffs herein. Second, the premise of defendants' argument – that plaintiffs

---

by wind or water and carried to a plaintiff's property, that may be a present, actionable tort, no matter how long ago defendants processed the mercury or placed it on their site. The effect is amplified if, as the Complaint alleges, the Individual Defendants knew this was happening, but concealed it and did nothing to prevent it. Hence, these are allegations of present contamination, present failure to contain the mercury wastes on Olin's premises, and present concealment of known harm. By contrast, the *LaBauve* quote on which Olin relies related to allegations that mercury had left the Olin premises long ago and was being transported from one place to another in the outside community. There is absolutely no basis in the record for ascribing a like theory to the claims of all 76 plaintiffs against all six Individual Defendants in this case.

[10] In the case at bar, Olin maintains that preemption is improper under *Burlington Northern & Santa Fe Ry. Co. v. Poole Chemical Co.*, 419 F.3d 355 (5th Cir. 2005). However, the Court considered and rejected that very argument last month in *Fisher*, reasoning that *Burlington* is distinguishable because that case involved a statute of repose, while *Fisher* (like the case at bar) involves a mere common-law rule of repose. *See Fisher*, 2007 WL 2995525, at *15. That distinction is critical, given the language in § 9658(a)(1) that the commencement date of any limitations period "specified in the State statute of limitations or under common law" is preempted. Thus, as in *Fisher*, the Court concludes here that defendants' reliance on *Burlington* is misplaced.

are complaining only of events occurring 25 years ago – is unsupported by the allegations of the Complaint and amounts to no more than wishful thinking. Under any reasonable reading of the Complaint, plaintiffs are complaining of alleged tortious conduct by the Individual Defendants that occurred far more recently than 20 years ago. As such, the Alabama rule of repose does not categorically bar plaintiffs' claims, regardless of whether § 9658(a)(1) does or does not furnish the requisite commencement date. The Court need not and will not enter a definitive, final ruling on the merits of the Individual Defendants' rule of repose defense. For purposes of the instant Motion to Remand, it suffices to find, and the Court does find, that there is at least a possibility that an Alabama state court could conclude that plaintiffs have stated claims against the Individual Defendants that survive a rule of repose analysis.

Olin also attempts to meet its burden of showing that the Individual Defendants were fraudulently joined by arguing that plaintiffs' claims against them are barred by the applicable statutes of limitations. Defendants correctly concede that the limitations periods for plaintiffs' claims do not begin to run until the federally required commencement date ("FRCD"), which is defined by statute as "the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages ... were caused or contributed to by the ... contaminant concerned." 42 U.S.C. § 9658(b)(4). An obvious corollary to this standard is that, because different plaintiffs may have become aware, or should have become aware, of the existence of their claims at different times, the FRCD must be fixed separately on a plaintiff-by-plaintiff basis. *See LaBauve*, 231 F.R.D. at 674. Nothing on the face of the Complaint suggests that the applicable FRCD for all six state-law claims brought by all 76 plaintiffs against all six Individual Defendants accrued outside the relevant limitations periods.[11] That said, the Court recognizes that fraudulent joinder analysis is not confined to the pleadings, but may also encompass "any affidavits and deposition transcripts submitted by the parties." *Legg*, 428 F.3d at 1322. But

---

[11] Of course, the statute of limitations is an affirmative defense which plaintiffs are not required to negate in their Complaint. *See La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004); *Flying Food Group, Inc. v. N.L.R.B.*, 471 F.3d 178, 183 (D.C. Cir. 2006) (plaintiff is not required to negate affirmative defenses in complaint, and allegations to avoid or defeat such defenses lie outside burden of pleading); *Thomas v. Independence Tp.*, 463 F.3d 285, 293 (3rd Cir. 2006) (rejecting unprecedented notion that plaintiff is required to plead allegations negating an affirmative defense).

where is defendants' evidentiary showing that the limitations periods cannot possibly be satisfied here? None has been made.[12] Thus, defendants have not established by clear and convincing evidence that there is no possibility that an Alabama court could conclude that at least one of the 76 plaintiffs has brought at least one claim against at least one Individual Defendant that is not time-barred.

Finally, defendants contend that the Individual Defendants were fraudulently joined because there is no evidence that they personally participated in the alleged torts identified in the Complaint. Certainly, it is a correct statement of Alabama law that an agent of a corporation cannot be held individually liable for the corporation's negligent or wrongful acts unless he personally contributed to or participated in them. *See generally Ex parte McInnis*, 820 So.2d 795, 798-99 (Ala. 2001) ("A corporate agent who personally participates, albeit in his or her capacity as such agent, in a tort is personally liable for the tort."); *Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.*, 496 So.2d 774, 775 (Ala. 1986) ("In Alabama, the general rule is that

---

[12] Instead, defendants embark on an exercise in highly strained logic. They claim that plaintiffs' brief contains an admission that plaintiffs knew of their claims against the Individual Defendants many years ago. It does no such thing. The statement in question is that in *LaBauve*, "the Plaintiff attorneys chose not to join the responsible individuals as defendants," such that "there was no resident defendant (though there could have been)." (Plaintiffs' Brief, at 2.) At most, this statement suggests that the *LaBauve* plaintiffs (and their legal team, seven-eighths of which are not counsel of record for plaintiffs in this case) knew about their potential claims against the Individual Defendants back in 2003. It certainly is not an admission about what the 76 plaintiffs in this case knew or when they knew it. Equally unavailing is defendants' contention that media coverage of the *LaBauve* case and newspaper articles concerning Olin contamination necessarily means that all 76 plaintiffs knew or reasonably should have known of their claims against the Individual Defendants outside the applicable limitations periods. Defendants proffer no evidence, much less clear and convincing evidence, that any of the 76 plaintiffs (much less all of them), were exposed to this media coverage; therefore, there is no evidentiary basis at this time for imputing that knowledge to all 76 plaintiffs as a matter of law. *See, e.g., Fisher*, 2007 WL 2995525, at *18-19 (pointing out that when a plaintiff was first placed on inquiry notice is ordinarily a fact question for the jury and that the existence of media reports raises a question of fact as to whether knowledge can be imputed to plaintiffs). Finally, defendants' unsupported contention that any "alleged release and intrusion of mercury onto Plaintiffs' properties, undeniably occurred more than six years ago" (Defendants' Brief, at 10) perhaps reflects defendants' ardent hope and firm conviction as to what the evidence will show; however, they have made no evidentiary showing to meet their burden of proving that no Alabama court could conclude otherwise.

officers or employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity."). Once again, however, Olin offers nothing more than its own opinion that the Individual Defendants did not personally participate in the alleged wrongdoing. There are no affidavits and no exhibits refuting the possibility that any of the six Individual Defendants personally participated in any of the conduct on which the six state-law claims brought by the 76 plaintiffs are predicated. Instead, defendants rehash arguments that the Court has already rejected (*i.e.*, that the wrongful conduct must have ended no later than 1982, before any of the Individual Defendants became employed at Olin's McIntosh plant in a managerial capacity; that a continuous tort theory is not viable for previously produced mercury that is transported from the Olin site many years later; and the like).[13] On this showing, the Court cannot foreclose all reasonable possibility, as a matter of law, that plaintiffs' claims against the Individual Defendants can satisfy the "personal participation" requirement for liability.

In short, what these 76 plaintiffs have done is allege an ongoing course of conduct by Olin and the Individual Defendants over a prolonged period of time of failing to contain mercury on Olin premises, allowing or causing that mercury to escape, contaminating plaintiffs' properties, having actual knowledge of such contamination, and concealing that information from plaintiffs. As demonstrated by the amount of ink this Court and the parties spilled in the *LaBauve* action, these types of claims are fraught with complex legal and factual obstacles relating to timeliness, causation, damages, and the like. There is certainly a possibility that plaintiffs may not prevail, or that one or more of defendants' affirmative defenses may carry the

---

[13] Defendants also assert that the fraud claims asserted against the Individual Defendants are inadequately pleaded under Rule 9 of the Alabama Rules of Civil Procedure. In making this contention, however, Olin overlooks Eleventh Circuit precedent counseling district courts that "[o]ur task is not to gauge the sufficiency of the pleadings" in the fraudulent joinder context, inasmuch as the "the decision as to the sufficiency of the pleadings is for the state courts, and for a federal court to interpose its judgment would fall short of the scrupulous respect for the institutional equilibrium between the federal and state judiciaries that our federal system demands." *Henderson*, 454 F.3d at 1284. The Court therefore declines Olin's invitation to evaluate the sufficiency of plaintiffs' pleading of their fraud claims under Rule 9. As to those fraud claims, defendants have failed to meet their heavy burden of establishing that there is no possibility that an Alabama state court might impose liability on the Individual Defendants.

day. But, no matter how much Olin urges it to do so, this Court cannot, and must not, make a final determination of the merits of plaintiffs' claims at this time beyond ascertaining whether they are arguable under state law. *See Crowe*, 113 F.3d at 1538 ("When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law."). After careful review of the pleadings and the parties' briefs, the Court is of the opinion that there at least a reasonable possibility that a state court would find that the Complaint states a cause of action against one or more of the Individual Defendants by one or more plaintiffs as to one or more of the six state-law claims. Olin has failed to meet its heavy burden by showing clear and convincing evidence to the contrary. For that reason, the citizenship of the Individual Defendants must be considered, destroying diversity, divesting this Court of subject matter jurisdiction, and necessitating the remand of this action to state court.

***D. Request for Attorney's Fees.***

At the close of their Motion to Remand, plaintiffs request an award of attorney's fees incurred through the improvident removal of this action from state court, pursuant to 28 U.S.C. § 1447(c). That provision authorizes the court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Id.* However, the Supreme Court has clarified that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 126 S.Ct. 704, 711, 163 L.Ed.2d 547 (2005); *see also Bauknight v. Monroe County, Fla.*, 446 F.3d 1327, 1329-32 (11th Cir. 2006) (following *Martin* and finding no abuse of discretion in district court's refusal to award costs and fees where removal was objectively reasonable and there were no unusual circumstances).

The Court finds that Olin's removal of this action to federal court was objectively reasonable. From a jurisdictional standpoint, Olin had at least a plausible argument that the requirements of 28 U.S.C. § 1332 for diversity of citizenship were satisfied; indeed, the claims asserted in the Complaint against the Individual Defendants are problematic in several respects

and may suffer from defects that an Alabama court ultimately deems fatal.[14] Although Olin's removal of this case to federal court was unsuccessful, and it failed to satisfy its heavy burden of proving fraudulent joinder, to award costs and fees in this case would be tantamount to declaring that such an award is warranted in every case where the removing defendants fail to meet their heavy burden of proving fraudulent joinder. The Court declines to impose such a sweeping penalty on the use of a fraudulent joinder theory. Simply put, because Olin's jurisdictional theory (while neither persuasive nor correct) cannot be said to have been objectively unreasonable, plaintiffs' request for fees and costs under § 1447(c) is **denied**.

**III. Conclusion.**

For all of the foregoing reasons, the undersigned concludes that defendants have failed to prove by clear and convincing evidence that the Individual Defendants were fraudulently joined. In light of that determination, those Individual Defendants' citizenship must be considered in applying the diversity provisions of 28 U.S.C. § 1332. It is undisputed that the Individual Defendants are of non-diverse citizenship from the 76 plaintiffs, inasmuch as all of them are Alabama citizens. Accordingly, the presence of these non-diverse defendants precludes the exercise of diversity jurisdiction. On that basis, plaintiffs' Motion to Remand (doc. 9) is **granted**, and this action is hereby **remanded** to the Circuit Court of Washington County, Alabama pursuant to 28 U.S.C. § 1447(c), for further proceedings. Plaintiffs' request for an award of just costs and actual expenses, including attorney's fees, incurred as a result of the removal is **denied**.

---

[14] Moreover, plaintiffs must share responsibility for the procedural quagmire (and accompanying expenditure of litigant and judicial resources) created by the removal and subsequent remand of this action. Their Complaint lacks clarity and specificity in several critical respects, including most notably time frames and the specific conduct ascribed to Individual Defendants. Had plaintiffs wanted to guard against the kinds of fraudulent joinder attacks that defendants quite foreseeably launched here, they could have included allegations (backed by good-faith investigation, per Rule 11) concerning the specific time frames of the alleged wrongdoing, the dates on which they became aware of their claims, and the like. Such detail may not have been legally required, but it could have gone a long ways towards defusing the fraudulent joinder objection that predictably ensued in the absence of such specificity.

DONE and ORDERED this 21st day of November, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE